UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Michael P. Henderson,   No. 13-cv-2917 (DWF/LIB)

      Plaintiff,

v.   **REPORT AND RECOMMENDATION**

Russell Clark, et al.,

      Defendants.

---

This matter came before the undersigned United States Magistrate Judge upon Defendants' Motion for Summary Judgment, [Docket No. 27].[1] The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota, referred the present motion to the undersigned Magistrate Judge for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. (Order of Reference [Docket No. 20]). The Court held a motion hearing on September 11, 2014, and the Court took Defendants' motion under advisement. For reasons articulated herein, the Court recommends that Defendants' Motion for Summary Judgment, [Docket No. 27], be **GRANTED** in its entirety.

## I.   STATEMENT OF FACTS

### A.   Background

Plaintiff Michael P. Henderson, proceeding *pro se*, brings the present action pursuant to 42 U.S.C. § 1983. (Compl. [Docket No. 1]). Plaintiff's claims arise from two related yet discrete events: Plaintiff's June 17, 2011 arrest, and Plaintiff's subsequent attempt to serve a civil lawsuit

---

[1] On September 9, 2014, Plaintiff Michael P. Henderson also filed a Motion for Extension of Time on Plaintiff's Response Memorandum, [Docket No. 43]. The Court considered all of Plaintiff's submissions in response to Defendants' Motion for Summary Judgment, and the motion may be termed as moot.

arising from the events of June 17, 2011. (Id.) Plaintiff alleges that Defendants Russell Clark, Jerry Newberger, and the City of Blaine (collectively, "Defendants") "have engaged and continue[] to engage in a pattern and practice of violating the Constitutional right of Due Process against the named Plaintiff." (Id. ¶ 7). Plaintiff alleges one count of violation of his Fourth Amendment rights against Detective Russell Clark "in his capacity as a Blaine Police Officer"; and one count of violation of his First Amendment rights against Sergeant Jerry Newberger "in his capacity as a Blaine Police Officer."[2] (Id. at Counts I-II). At the motion hearing, Plaintiff's arguments also made clear that all of his claims against the individual Defendants are in their "official" capacities. Additionally, Plaintiff clarified by his arguments at the motion hearing that he alleges all counts against the City of Blaine pursuant to the doctrine of *respondeat superior*. (Id. ¶ 12). Plaintiff requests relief in the form of (1) a monetary judgment; (2) punitive damages; and (3) any additional relief the Court deems just, proper and equitable. (Id. at 3).

First, Plaintiff alleges that on June 17, 2011, Detective Russell Clark unlawfully arrested Plaintiff for possession of controlled substances after unlawfully searching Plaintiff's vehicle and seizing evidence contained therein. (Id. ¶ 7a). Plaintiff alleges that following law enforcement's warrantless seizure of evidence from Plaintiff's vehicle, Detective Clark applied for and received a search warrant <u>to search Plaintiff's vehicle</u> (although law enforcement had already performed such a search), and that, following execution of the warrant, Detective Clark submitted an inventory form listing all items <u>previously</u> seized from Plaintiff's vehicle without a warrant. (Id.) Plaintiff alleges that Detective Clark unlawfully attempted to retroactively justify his warrantless

---

[2] At the September 11, 2014 motion hearing, Plaintiff represented that all references to "negligent misrepresentation" and "deceit" in his Complaint are meant to bolster his Fourth Amendment Section 1983 claim and <u>do not serve as an independent claim/allegation</u>; Plaintiff expressly represented that his Complaint is meant to allege <u>two</u> claims: a Fourth Amendment Section 1983 claim and a First Amendment Section 1983 claim.

search of Plaintiff's vehicle by listing items seized <u>prior</u> to receipt of the warrant as seized <u>pursuant</u> to the warrant, in violation of Plaintiff's Fourth Amendment rights. (<u>Id.</u>)

Second, Plaintiff alleges that on June 26, 2012, Plaintiff attempted to serve Detective Clark and the City of Blaine with a Minnesota state civil lawsuit arising from the events of June 17, 2011, but Blaine Police Sergeant Jerry Newberger refused service and demanded Plaintiff's process server leave the premises and take the summons and complaint with her. (<u>Id.</u> ¶ 7b). Plaintiff alleges that when he called the Blaine Police Department and "explained that they were in fact interfering with a civil process[,]" Blaine police officers escorted "Plaintiff and his entourage" out of the City of Blaine. (<u>Id.</u>)

In his deposition testimony, Plaintiff expressly clarifies that his primary allegation in the present case is that Defendants unlawfully towed his white Chevy Cavalier, conducted a search of the vehicle, and seized evidence from the vehicle prior to securing a search warrant for the vehicle, in violation of Plaintiff's constitutional rights. (Zipf Aff. [Docket No. 32-1], Ex. 1 at 35:1-17).

**B.     Statement of Undisputed Facts**

On June 16-17, 2011, Detective Russell Clark of the Blaine Police Department, in his capacity as a member of the Anoka Hennepin Drug Task Force, received information that a "Michael Henderson" may be storing a methamphetamines lab in a vehicle located at 118th Avenue and University Avenue in the City of Blaine, State of Minnesota. (Clark Aff. [Docket No. 31], Ex. 1). The Task Force received information that a blue passenger car and a white passenger car may contain the lab equipment. (<u>Id.</u>) The Task Force had reason to believe that "Michael Henderson" had been residing in the reported area with a woman named "Shari." (<u>Id.</u>)

Detective Clark proceeded to the location of the town homes located at 118th Avenue and University Avenue and located a four-door blue passenger car, as described in the information the Task Force had at its disposal. (Id.) Detective Clark ran the license plate of the vehicle and determined that the blue Oldsmobile Cutlass was registered to a Shari Ann Engen. (Id.)

Detective Clark, with assistance from other law enforcement officers, made contact with and interviewed Shari Ann Engen at the scene regarding a possible meth lab inside the blue Oldsmobile Cutlass, parked outside of her home. (Allen Aff. [Docket No. 30], Ex. 1). Police reports from that night indicate the Ms. Engen admitted that a "Jeffrey/Jason" and a "Michael" had placed some items in her trunk that she believed to be a meth lab. (Id.) Detective Clark asked Ms. Engen for consent to search her vehicle, to which Ms. Engen replied, "Yes, definitely." (Id.) Detective Clark went over the consent to search form with Ms. Engen and advised her of her rights, including her right to refuse to consent to a search of her vehicle. (Id.; Clark Aff. [Docket No. 31], Ex. 1). Ms. Engen signed the form. (Id.)

After receiving Ms. Engen's consent, officers approached the vehicle and immediately noted a chemical odor emanating from the vehicle. (Allen Aff. [Docket No. 30], Ex. 1). Ms. Engen opened the trunk of her vehicle, and officers observed multiple items that, in their training and experience, are often used to make methamphetamines. (Id.) Officer Mark Allen of the Blaine Police Department immediately called the Spring Lake Park/Blaine/Mounds View Fire Department to respond to the scene and test the vehicle to ensure it was safe and not explosive. (Id.) After responders advised law enforcement that the vehicle was safe, members of the Drug Task Force and Crime Lab searched the vehicle. (Id.) Ms. Engen remained approximately twenty feet from the vehicle and could see what law enforcement was doing; at no time did Ms. Engen

4

tell any law enforcement officer to stop searching the vehicle. (Clark Aff. [Docket No. 31], Ex. 1).

Plaintiff, driving a white, four-door Chevy Cavalier, arrived at the scene as law enforcement was processing the contents of Ms. Engen's vehicle. (Id.) Detective Clark ascertained that the white Cavalier, by its license plate, was registered to a Michael Peter Henderson. (Id.) Detective Clark and several other officers approached Plaintiff and identified themselves as police officers. (Id.) Detective Clark asked Plaintiff for his name, and Plaintiff replied, "Mike Henderson." (Id.) Based on "constructive possession" evidence found in and seized from the blue Cutlass (including paperwork indicating that Plaintiff had purchased the blue Cutlass and an insurance card for the blue Cutlass in Plaintiff's name) and the information officers received on-scene from Ms. Engen, Detective Clark informed Plaintiff that he was under arrest for first degree controlled substance manufacture. (Id.)

While arresting Plaintiff near the white Cavalier, Detective Clark observed several coffee filters in the back seat of the vehicle. (Id. at 5). From his training and experience, Detective Clark knew that coffee filters are commonly used in the process of cooking methamphetamines. (Id.) Because Plaintiff was a suspect regarding the suspected meth lab recovered from the blue Cutlass, Detective Clark believed that contraband may be found Plaintiff's white Cavalier. (Id.) Law enforcement towed Plaintiff's white Cavalier to the Blaine Police Department and placed the vehicle in the evidence garage. (Id.)

Officer Allen reported that law enforcement *did* search Plaintiff's Chevy Cavalier for hazardous materials prior to its impoundment, specifically noting that law enforcement did not conduct a <u>thorough</u> search of the vehicle at that time. (Allen Aff. [Docket No. 30], Ex. 1). A

Blaine Police Department Vehicle Impound Sheet indicates that the white Cavalier was to be held as and for the recovery of evidence. (Clark Aff. [Docket No. 31], Ex. 2).

Later that same day, Detective Clark applied for a search warrant to search Plaintiff's impounded white Cavalier. In support of his application therefor, Detective Clark recounted the events of June 16-17, 2011. (Id. at Ex. 3). Following execution of the warrant, Detective Clark reported recovering methamphetamines, a digital scale, meth pipes and bongs, drug packaging, and unknown white powder. (Id.)

An Anoka County Sheriff's Office Evidence Receipt, dated June 17, 2011, indicates that law enforcement seized various items at the scene of the underlying incident, from both the blue Cutlass and Plaintiff's white Cavalier, at approximately 12:10 a.m. (Pl.'s Exhibits in Opposition to Mot. Summ. J. [Docket No. 37-1]). A search warrant return submitted for the Court's consideration indicates that Detective Clark executed a search warrant for the white Cavalier at 3:45 p.m. later that same day; Detective Clark claims to have seized – as a result of execution of the search warrant – the *same items* previously reported to have been seized from the white Cavalier at the scene of the underlying incident. (Pl.'s Exhibits in Opposition to Mot. Summ. J. [Docket No. 37-3]).

## II.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, [DOCKET NO. 27]

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants Russell Clark, Jerry Newberger, and the City of Blaine (collectively, "Defendants") move the Court for an order entering summary judgment in Defendants' favor. (See [Docket No. 27]). Defendants argue that Plaintiff cannot prevail, as a matter of law, on his alleged Section 1983 claims because Plaintiff

6

alleges only Monell claims, and Plaintiff cannot establish that the alleged violations of Plaintiff's federally protected rights may be attributed to any municipal custom or policy.

### A.     Standard of Review

Summary judgment is appropriate only when the evidence demonstrates that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Smutka v. City of Hutchinson, 451 F.3d 522, 526 (8th Cir. 2006). A disputed fact is "material" if it may affect the outcome of the case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the burden of offering sufficient admissible evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986). Courts must view the evidence in the light most favorable to the nonmoving party, and courts must afford the nonmoving party the benefit of all reasonable inferences to be drawn from the underlying facts in the record. Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569 (8th Cir. 1991). However, the nonmoving party may not rest on mere allegations or denials in their pleadings, but must set forth specific admissible, evidence-based facts demonstrating the existence of a genuine issue. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002).

The movant is entitled to summary judgment when the nonmoving party fails to "establish the existence of an essential element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

"Naked assertions, unsubstantiated by the record" made in rebuttal do not amount to sufficient evidence to preclude summary judgment. Dutton v. University Healthcare Sys., L.L.C., 136 Fed. Appx. 596 (5th Cir. 2005) (unpublished decision); see also Simms v. McDowell, 2009 WL 3160353, at *5 (W.D. Ky. Sept. 25, 2009) (holding that speculation that someone lied in an affidavit is "insufficient to defeat a motion for summary judgment"). "A properly supported motion for summary judgment is not defeated by self-serving affidavits." Frevert v. Ford. Motor Co., 614 F.3d 466, 473 (8th Cir. 2010) (quoting Bacon v. Hennepin County Med. Ctr., 550 F.3d 711, 716 (8th Cir. 2008)). "Rather, the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." Id. at 473-74.

With respect to *pro se* litigants, "Although *pro se* pleadings are to be construed liberally, *pro se* litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984).

**B.   Analysis**

Any factual disputes concerning the events of Plaintiff's June 17, 2011, arrest and law enforcement's subsequent search and seizures and/or the events of Plaintiff's June 26, 2012, service attempt are ultimately immaterial. Even assuming, *arguendo*, that Detective Clark *did* perform an unlawful search and seizure and/or that Sergeant Newberger *did* improperly refuse service, Plaintiff has failed to "establish the existence of an essential element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. Plaintiff (1) fails to offer *any* evidence to suggest the involvement of an official municipal custom or policy in the alleged Fourth Amendment violations, and (2) fails to allege any violation of his First Amendment rights. Accordingly, no genuine issue of material fact exists that may preclude summary judgment because "a complete failure of proof concerning an

essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Plaintiff's Complaint itself does not explicitly identify the capacity in which Plaintiff sues the individually-named Defendants – Detective Clark and Sergeant Newberger. As a result, the Court must infer that Plaintiff sues Defendants Clark and Newberger in their official capacities:

> Where a claim is brought against a municipal official under § 1983, the plaintiff must allege whether the claim proceeds against that person in an individual or an official capacity. If no capacity is stated, the claim is deemed to be against the person in an official capacity, which in turn means that the suit is one against the employing municipality.

Uland v. City of Winsted, 570 F. Supp. 2d 1114, 1119-20 (D. Minn. 2008) (citing Baker v. Chisom, 501 F.3d 920, 924 (8th Cir. 2007); Bankhead v. Knickrehm, 360 F.3d 839, 844 (8th Cir. 2004)). Compellingly, in his response to Defendants' Motion for Summary Judgment and again at the September 11, 2014 motion hearing, Plaintiff explicitly represented that he sues Defendants Clark and Newberger in their official capacities. (Pl.'s Resp. Mem. [Docket No. 36], at 6). Accordingly, the Court evaluates Plaintiff's Section 1983 claims as alleged against individual Defendants Clark and Newberger as Section 1983 claims against the employing municipality, the City of Blaine.

In Monell v. Dep't of Soc. Servs. of City of New York, the United States Supreme Court held that a municipality is subject to liability pursuant to 42 U.S.C. § 1983 only when the alleged violation of the plaintiff's federally protected rights may be attributed to the enforcement of a municipal custom or policy. 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). Municipalities cannot be held liable under Section 1983, as a matter of law,

9

"unless action pursuant to official municipal policy of some nature caused a constitutional tort." Anderson v. City of Hopkins, 805 F. Supp. 2d 712, 722-23 (D. Minn. 2011) (citing Kuha v. City of Minnetonka, 365 F.3d 590, 603 (8th Cir. 2003) (citations omitted); Sitzes v. City of W. Memphis Ark., 606 F.3d 461, 470 (8th Cir. 2010) (holding that without any underlying constitutional violation, a plaintiff cannot maintain a claim against a local government)).

To survive summary judgment on a Section 1983 Monell claim as alleged against a government entity, a plaintiff must offer evidence sufficient to demonstrate a genuine dispute of material fact as to (1) the existence of a municipal custom or policy (2) that is the "moving force" behind a constitutional violation. Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999). Under Section 1983, a municipality may not be held vicariously liable for the unconstitutional acts of employees – it may only be held liable for the unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional municipal policy or custom. Id.; see also Doe v. Washington County, 150 F.3d 920, 922 (8th Cir. 1998); Board of Comm'rs v. Brown, 520 U.S. 397, 400 (1997) (holding that only "deliberate" action by a municipality can meet the "moving force" requirement).

The Eighth Circuit does not use the terms "custom" and "policy" interchangeably when engaging in a Monell analysis. Rather, "a 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." Mettler, 165 F.3d at 1204 (citing Ware v. Jackson County, 150 F.3d 873, 880 (8th Cir. 1998) (internal citations omitted)). A municipal custom to which constitutional violations may be attributed, on the other hand, requires proof of three elements:

> 1) The existence of a continuing, persistent, widespread pattern of unconstitutional misconduct by the County's employees

    2) Deliberate indifference to or authorization of unconstitutional conduct by the County's policymaking officials after notice to the officials of the purported misconduct; and
    3) That Plaintiff was injured by acts pursuant to such policy (the "moving force" behind the constitutional violations).

Mettler, 165 F.3d at 1204 (internal citations omitted).

    On the present record before the Court, Plaintiff has failed to offer any admissible evidence sufficient to demonstrate a genuine dispute of material fact as to the existence of a municipal policy or custom to which the alleged Fourth Amendment violation(s) may be attributed. Nothing in the present record before the Court remotely identifies or even implicates a city "official policy" involved in the alleged deprivation of Plaintiff's Fourth Amendment rights, nor does Plaintiff offer any evidence sufficient to demonstrate a custom or "widespread pattern of unconstitutional misconduct." In fact, Plaintiff seemingly admits that he cannot prove his conclusory Fourth Amendment allegations at this juncture and instead asks the Court for the opportunity to present evidence at trial: "Plaintiff would, if given the opportunity, prove that Clark first targeted Henderson, later helped to manufacture the 'probable cause' to arrest him, then made false tests positive, later amended and worked to convict this Plaintiff 'falsely' by abuse of that Officer's authority, knowing that this violated the rights of the accused under the Constitution and laws of both state and federal origin." (Pl.'s Opp. Mem. [Docket No. 36], at 6).[3] Plaintiff conceded his inability to demonstrate the involvement of a municipal custom or policy in his deposition in the present case:

    Q: Do you think that the City of Blaine has any policies in place that caused your alleged constitutional violations?
    A: I think they do.
    Q: What do you –

---

[3] In opposing summary judgment, a party may not rely on evidence that "might" materialize by and be offered at trial, but "must show that admissible evidence *will be* available at trial to establish a genuine issue of material fact." Fin. Timing Publications, Inc. v. Compugraphic Corp., 893 F.2d 936, 942 (8th Cir. 1990) (emphasis added) (evaluating the evidence presented at summary judgment as "if a jury heard the case today").

11

> A: I think that they will arrest somebody – I think that their investigators, what they do is they hear things, they will hear such-and-such or they look at your past and I think that they prejudge people and I think that prejudice, that prejudging leads to arrests and that they will even cover to make those arrests happen.

(Zipf Aff. [Docket No. 32-1], Ex. 1 at 69:23-70:8). Construing Plaintiff's allegations liberally, at best, he alleges that Detective Clark has a history of arresting individuals without probable cause. However, Plaintiff offers no evidence outside of conclusory allegations advanced in his Complaint and deposition testimony. Rather, purportedly based on conversations he's had with other detainees while he has been in jail, Plaintiff asserts, "Well, they (the City of Blaine) must have a policy of not actually correcting their officers, letting their officers run . . . ." (Id. at 73:10-11). In fact, at one point in his deposition, Plaintiff admits, "I'm shooting around corners. There is something there, but I don't know what it is." (Id. at 109:9-10).

In light of the fact that the present record before the Court is devoid of evidence sufficient to create a genuine issue of material fact as to the existence or involvement of a municipal custom or policy to which Plaintiff's alleged Fourth Amendment violations may be attributed, Plaintiff cannot prevail on his Fourth Amendment Section 1983 claim as a matter of law. Even assuming, *arguendo*, that Detective Clark did indeed individually violate Plaintiff's federally protected rights, Plaintiff cannot prevail on his Fourth Amendment Monell claim for reasons stated herein. "A single incident normally does not suffice to prove the existence of a municipal custom." Mettler, 165 F.3d at 1205 (citations omitted). Accordingly, the Court recommends **GRANTING** Defendants' Motion for Summary Judgment, [Docket No. 27], with respect to Plaintiff's Fourth Amendment Section 1983 claims.

With respect to Plaintiff's First Amendment Section 1983 claim, Plaintiff has, first and foremost, failed to offer evidence sufficient to demonstrate a genuine dispute of material fact as

to even the existence of a First Amendment violation. Plaintiff did not and does not have a First Amendment right that would require Sergeant Newberger's acceptance of service of Plaintiff's summons and complaint on behalf of Detective Clark and the City of Blaine. Accordingly, Plaintiff fails to sufficiently demonstrate that Sergeant Newberger violated Plaintiff's First Amendment rights. See Schroeder v. Mabellos, No. 93-16472, 29 F.3d 634, at *2 (9th Cir. May 13, 1994) (declining to recognize a First Amendment right to serve process); see, e.g., Tweeton v. Frandrup, No. 06-cv-1130 (PAM/JSM), 2006 WL 3627010, at *8 (D. Minn. Dec. 12, 2006) aff'd, 287 F. App'x 541 (8th Cir. 2008) (finding no First Amendment violation regarding the plaintiff's inability to effect service of process and finding instead that the plaintiff's "inexperience with the legal system as a *pro se* plaintiff contributed to his frustration with issues related to filings and service of process. [Plaintiff's] rights were not violated; rather, [the plaintiff] had insufficient knowledge of how to respond to events in the legal process.").

Significantly, on the present record, Sergeant Newberger did nothing wrong in regard to service of process. Under Minnesota law, service of a lawsuit may be effected upon an individual only by "delivering a copy to the individual personally or by leaving a copy at the individual's usual place of abode with some person of suitable age and discretion then residing therein." Minn. R. Civ. P. 4.03(a). In this case, Plaintiff did *neither* of the foregoing in seeking to serve Detective Clark by attempting to leave papers with Sergeant Newberger; Plaintiff *did not* deliver a copy to Clark personally, nor did he leave the papers at Clark's residence with a suitable individual residing therein.

Similarly, service upon the City of Blaine, a municipality, may be effected only by delivering a copy:

> (1) To the chair of the county board or to the county auditor of a defendant county;

> (2) To the chief executive officer or to the clerk of a defendant city, village or borough;
> (3) To the chair of the town board or to the clerk of a defendant town;
> (4) To any member of the board or other governing body of a defendant school district; or
> (5) To any member of the board or other governing body of a defendant public board or public body not hereinabove enumerated.

Minn. R. Civ. P. 4.03(e). At the time Plaintiff sought to effect service upon the City of Blaine by attempting to leave a copy of the summons and complaint with Sergeant Newberger, the Sergeant was not the chair of the county board, the chief executive officer or clerk of the municipality, nor any other individual designated under Minn. R. Civ. P. 4.03(e) to receive service for the City of Blaine.

Accordingly, Plaintiff did not properly attempt to effect service upon either Detective Clark or the City of Blaine when he tried to leave papers with Sergeant Newberger; Sergeant Newberger had no obligation or duty to accept the summons and complaint on behalf of either party.

Because the present record before the Court is devoid of any evidence sufficient to create a genuine issue of material fact as to the existence of a First Amendment violation, Plaintiff cannot prevail on his First Amendment Section 1983 claim as a matter of law. Accordingly, the Court also recommends **GRANTING** Defendants' Motion for Summary Judgment, [Docket No. 27], with respect to Plaintiff's First Amendment Section 1983 claim.[4]

---

[4] Even if the record did indicate a genuine issue of material fact as to whether any Defendant violated Plaintiff's First Amendment rights, the present record before the Court is likewise devoid of evidence sufficient to create a genuine issue of material fact as to the existence or involvement of a <u>municipal custom or policy</u> to which Plaintiff's alleged First Amendment violation(s) may be attributed, and his First Amendment Section 1983 would fail under <u>Monell</u> for this reason.

### III. CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

Defendants' Motion for Summary Judgment, [Docket No. 27], be **GRANTED** in its entirety.


Dated: October 1, 2014				s/Leo I. Brisbois
						Leo I. Brisbois
						U.S. MAGISTRATE JUDGE


### N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by October 15, 2014**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections **within fourteen (14) days of service thereof, and in no event later than October 29, 2014**. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.